STATE OF MISSOURI, Respondent, v. FRANK McCORMICK, Appellant.

St. Louis Court of Appeals.   Argued and Submitted March 2, 1914. Opinion Filed April 7, 1914.

FOOD: Selling Adulterated Food: Persons Within Statute.   A clerk of a dealer, who, as such, merely receives an order and, on its being accepted by his employer, selects and ships out the goods, is not guilty of the offense denounced by Section 6605, R. S. 1909, relating to the sale of adulterated food, since the sale was by the employer, and the clerk was not the "person" making the sale in the sense of the statute.

Appeal from St. Louis Court of Criminal Correction. —*Hon. Calvin N. Miller,* Judge.

REVERSED.

*Eliot, Chaplin, Blayney & Bedal* for appellant.

(1)   When the question is as to the condition of certain articles which are taken from a homogeneous lot or mass, testimony as to the condition of the remainder of the lot is relevant and material.   Corbin v. U. S., 181 Fed. 296; Dixon v. Watson, 41 Tex. Civ. App. 266; Davis v. Chemical Co., 105 N. Y. Supp. 693; Epps v. State, 102 Ind. 539.   (2)   Evidence as to col-

lateral facts is relevant and material when it sheds a real light on the question in issue. Jones on Evidence, secs. 137 and 138; Taylor on Evidence, Sec. 316; Ames v. Quimby, 106 U. S. 342; Kingston Cotton Mills v. Hoisery Co., 154 N. C. 462; Buchanan v. Collins, 42 Ala. 419; Remy v. Olds, 99 Cal. 19; Commonwealth v. Goodman, 97 Mass. 117. (3) Nothing passes under a sale of a part of a lot or mass until the part has been in some way designated or appropriated to the sale. American Metal Co. v. Dougherty, 204 Mo. 71; Adam Roth Grocery Co. v. Lewis, 69 Mo. App. 446.

*Howard Sidener*, prosecuting attorney, for respondent.

(1) The information charges an offense in the language of the statute and is therefore sufficient. State v. Fare, 39 Mo. App. 110; State v. McDaniels, 40 Mo. App. 356; State v. Parker, 39 Mo. App. 116; State v. Buck, 43 Mo. App. 443. (2) Evidence as to the condition of a certain mass of goods from which a part is taken and sold is competent only in criminal proceedings to prove want of criminal intent where the statute makes the intent a constituent part of the crime. But in this class of cases the rule is different. 1 Am. and Eng. Ency. of Law, 744. (3) Where a mass of goods is all of the same quality, appropriation is not necessary to pass title. The intention of the parties govern. Burdick on Sales, sec. 78, p. 43; Hurff v. Hires, 40 N. J. L. 581; Gillett v. Hill, 2 C. and M. 530; Brownfield v. Johnson, 128 Pa. State, 254; State v. Meyer, 54 Ohio State, 242. (4) The defendant is amenable to prosecution under section 6592, R. S. 1909. State v. Meyer, 54 Ohio State, 242.

REYNOLDS, P. J.—The defendant was proceeded against in the court of criminal correction of the city

of St. Louis for selling one dozen hen eggs to one Gaia, in violation of section 6592, Revised Statutes 1909, it being charged that the eggs fell under the designation of "adulterated food," as defined by section 6595, in that they consisted wholly or in part of diseased, filthy, decomposed, putrid and rotten animal substance and were unfit for food, the act being a misdemeanor, the punishment for which, as prescribed by section 6605, being a fine of not less than ten nor more than five hundred dollars, or by imprisonment in the county jail not to exceed six months, or by both such fine and imprisonment. On trial before the court, a jury having been waived, defendant was found guilty. Filing a motion for a new trial as also one in arrest, and saving exceptions to the action of the court in overruling these motions, defendant duly perfected his appeal to this court from a judgment imposing a fine of one hundred dollars and costs.

Learned counsel for appellant make several assignments of error but it is not necessary to notice them in detail.

It appears that defendant was a clerk in the employ of a commission company. Some one in the employ of Gaia, who carried on a grocery, called up the commission company on the telephone and said that the Gaia concern wanted to buy a case of first-class eggs. Defendant answered the call, took the order, and told the Gaia man he would see that they got a case of first-class eggs. Some time that day defendant picked out eighteen cases of eggs, turned them over to a teamster in the employ of the commission company and told him to deliver seven of them to one customer, ten to another and one to Gaia. The eggs in all the cases had been "candled" and pronounced to be in first-class condition. Defendant "candled" some of them himself. The teamster delivered the eighteen cases to the several parties, one to Gaia, selecting the cases just as they happened to be loaded in the wagon, none of

them being marked for any particular customer. Many of the eggs in the case delivered to Gaia were found to be rotten.

It appears that defendant was at the time a general utility man in the employ of the commission company; that it was part of his duty to take orders for eggs when orders came in to the commission company, and turn in the orders to the office of the company. He took this order from Gaia's clerk, quoting the price, and told him he would have the delivery made that afternoon. When he took the order over the telephone he wrote it out on a slip and passed the slip into the office of the commission company, where the credit of the proposed purchaser being passed upon as good by the proper person in the office other than defendant, that person billed the case of eggs to Gaia in accordance with the slip and made out a delivery slip or sales bill in duplicate, and defendant handed both to the teamster, the latter retaining one to be signed by the purchaser on delivery of the case, the other retained by the purchaser, the purchaser being charged with the sale price by the proper person in the office of the commission company. The defendant had nothing to do with this sale, beyond taking the order, reporting it to the office of his employer, and when the order was accepted, selecting and shipping out the goods. This is the substance of the evidence of defendant. It is not only not contradicted but is supported, so far as the knowledge of the witnesses went, by the testimony of all the other witnesses in the case.

The various sections of the statute referred to are levelled at ''any person, firm, association or corporation . . . who . . . shall sell'' adultered food, as adulterated food is defined. It is levelled against the seller. Clearly this defendant did not make this sale. He had no interest in it or connection with it in any capacity other than as clerk or salesman for the company in whose employ he was at the time. It was a

sale by the company. Defendant is a "person" it is true, but not the person making the sale in any sense of the statute. The intended purchaser called at the commission company and made the purchase from it; through the defendant, in a measure, but not from him. All that the purchaser knew of defendant was that he was the one who answered the telephone call and acted for the commission company.

The motion to acquit made at the close of the testimony should have been sustained.

The judgment of the court of criminal correction is reversed and the defendant discharged. *Nortoni* and *Allen, JJ.,* concur.

